IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN A. MONTOYA,

        Plaintiff,

vs.                                                                                                                           1:19-cv-00550-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff John A. Montoya's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 22), which was fully briefed on May 15, 2020. *See* Docs. 26, 27, 28. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the ALJ failed to properly weigh the opinion of Mr. Montoya's treating physician, Dr. Thomas Longley. I therefore GRANT Mr. Montoya's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Mr. Montoya was born in 1974, earned a bachelor's degree in psychology, and took some courses towards a master's degree in human resources and management. AR 41, 254, 259.[4] He has worked in retail sales, as a professional and physician recruiter, business trainer, assistant retail manager, area manager, and as a computer and telephone repair technician at Apple. AR 42–48, 76–79. Mr. Montoya filed an application for Disability Insurance Benefits ("DIB") on September 21, 2015 and an application for Supplemental Security Income ("SSI") on October

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 14-1 through 14-50 are the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

21, 2015, alleging disability since June 24, 2013 due to lung and stomach cancer, seizures, and an inability to stand or walk. AR 216–222, 258. Mr. Montoya later amended his alleged onset date to January 1, 2015. AR 76, 377. The Social Security Administration ("SSA") denied his claims initially on January 19, 2016. AR 157–62. The SSA denied his claims on reconsideration on August 12, 2016. AR 165–70. Mr. Montoya requested a hearing before an ALJ. AR 173–74. On January 12, 2018, ALJ Eric Weiss held a hearing. AR 33–84. ALJ Weiss issued his unfavorable decision on July 19, 2018. AR 14–32.

The ALJ found that Mr. Montoya met the insured requirements of the Social Security Act through December 31, 2020. AR 20. At step one, the ALJ found that Mr. Montoya had not engaged in substantial, gainful activity since January 1, 2015, his amended alleged onset date. *Id.*[5] At step two, the ALJ found that Mr. Montoya suffered from the following severe impairments: gastric carcinoid, status-post gastrectomy and gastroenterostomy, and migraine headaches. *Id*. The ALJ found a number of Mr. Montoya's impairments to be non-severe: "seizure disorder, vertigo, comminuted fracture of the pubic ramus, lung nodules, septal deviation, hypertension, insomnia, left shoulder impingement, degenerative disc disease, mild scoliosis, mild narrowing of the gastroesophageal junction, mild distal esophagitis, mild gastritis, and anxiety with panic attacks." *Id*.

At step three, the ALJ found that none of Mr. Montoya's impairments, alone or in combination, met or medically equaled a Listing. AR 21. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Montoya's RFC. AR 21–25. The ALJ found Mr. Montoya had the RFC to perform light work

---

[5] The ALJ found Mr. Montoya's part-time work for Apple in 2015 and 2016 and his part-time work as a hospice companion between April 2017 and the time of the hearing did not rise to the level of substantial gainful activity. AR 20.

> except he can lift 20 pounds occasionally and lift and carry 10 pounds frequently and push and pull the same.  He can walk and stand six hours per eight-hour workday and sit for six hours per eight-hour workday with normally scheduled breaks.  He can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; he should never climb ladders, ropes, and scaffolds; and he must avoid exposure to unprotected heights and dangerous moving machinery.

AR 21.

The ALJ found Mr. Montoya not disabled at step four because he was capable of performing his past relevant work as a professional recruiter and as an assistant manager in retail. AR 25.  The ALJ also made an alternative finding that Mr. Montoya was not disabled at step five because there were jobs that exist in significant numbers in the national economy that he could perform—such as cashier II, furniture rental clerk, and storage facility rental clerk.  AR 25–26.

Mr. Montoya requested review of the ALJ's unfavorable decision by the Appeals Council.  AR 215.  On April 16, 2019, the Appeals Council denied the request for review.  AR 1–8.  Mr. Montoya timely filed his appeal to this Court on June 14, 2019.  Doc. 1.

### IV.     Mr. Montoya's Claims

Mr. Montoya raises three arguments for reversing and remanding this case:  (1) the ALJ improperly rejected the opinion of treating physician Thomas Longley, M.D., (2) the ALJ breached his duty to develop the record about his seizures, depression, and anxiety, and (3) the ALJ's RFC failed to account for his subjective allegations of pain, and therefore is not supported by substantial evidence.  *See* Doc. 22.  Because I remand based on the ALJ's failure to properly weigh the opinion of Dr. Longley, I do not address the other alleged errors, which "may be affected the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

5

**V.      Analysis**

Mr. Montoya argues that the ALJ failed to properly analyze the opinion of his treating physician, Dr. Thomas Longley. Doc. 22 at 6–11.[6] He argues that the ALJ failed to give good reasons for giving Dr. Longley's opinion "little weight," as required in the second step of the treating physician analysis. *Id*. at 8–11. The Commissioner argues that the ALJ gave "good reasons" for giving Dr. Longley's opinion "little weight." Doc. at 9–10. The Court agrees with Mr. Montoya.

In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300). If the opinion meets both criteria, the ALJ must give the treating source's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that

---

[6] Mr. Montoya argues that the ALJ failed to comply with SSR 96-2p in weighing Dr. Longley's opinion. Doc. 22 at 2, 6–11. SSR 96-2p does not apply to claims adjudicated on or after March 27, 2017, including Mr. Montoya's claim, which was adjudicated on July 19, 2018. AR 14, 27. The original Notice of Rescission for SSRs 96-2p, 96-5p, and 06-03p stated that these SSRs were rescinded only "**for claims filed** on or after March 27, 2017." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2p, 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017) (emphasis added). However, the Social Security Administration then corrected the original notice of rescission to state that these SSRs were rescinded **effective** March 27, 2017. *See* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p; Correction, SSR 96-2p, 2017 WL 3928297, at *1 (S.S.A. Apr. 6, 2017) (emphasis added). Thus, none of these SSRs apply to claims adjudicated on or after March 27, 2017. *See also* HALLEX 1-5-3-30, Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 1362776, at *5 (S.S.A. Apr. 14, 2017) (advising ALJs not to apply these SSRs to claims adjudicated on or after March 27, 2017 and stating that "the agency rescinded the . . . SSRs and incorporated the policies in those SSRs into the rules applicable in claim(s) filed before March 27, 2017.").

the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

1. **Examining relationship**:  more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**:  more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:**  more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:**  the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**:  more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:**  any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (effective March 27, 2017); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301.  As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference.  *Watkins* 350 F.3d at 1300.

An ALJ is not required to expressly analyze each of the six factors.  *Oldham*, 509 F.3d at 1258.  However, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons in [the] notice of determination or decision for the weight assigned to a treating [source's] opinion."  *Watkins*, 350 F.3d at 1300 (internal quotation and citations omitted); *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2)

7

(effective March 27, 2017).  The reasons must be "tied to the factors specified in the cited regulations" and must be "sufficiently specific."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017).  "[I]f the ALJ rejects [an] opinion completely, he must then give specific, legitimate reasons for doing so."  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1301).

     Dr. Longley began treating Mr. Montoya on July 18, 2016.  AR 1128.  Mr. Montoya had recently moved to New Mexico from Florida, and sought to establish care with a new primary care physician.  *Id*.  Mr. Montoya had a history of gastric cancer, lung cancer, and panic attacks.  *Id*.  Mr. Montoya reported an inability to control his bowels, diarrhea alternating with constipation, stabbing pains in his abdomen, wasting syndrome, vitamin D deficiency, low vitamin B12, a history of seizures, insomnia, pain, migraines, and seasonal allergies.  AR 1128–29.  Dr. Longley diagnosed Mr. Montoya with the following:  gastric cancer, total gastrectomy and Roux-en-Y esophagojejunal anastomosis,[7] vitamin B12 deficiency, vitamin D deficiency disease, hypogonadism, a seizure disorder, irritable bowel syndrome, seasonal allergies, chronic pain, pernicious anemia,[8] and migraine without aura and without status migrainosus, not intractable.  AR 1130–32.  Dr. Longley prescribed tapentadol and oxycodone-acetaminophen for Mr. Montoya's chronic pain, and referred him to gastroenterology for further evaluation of his

---

[7] During a total gastrectomy, "[t]he surgeon removes the entire stomach, nearby lymph nodes, and omentum, and may remove the spleen and parts of the esophagus, intestines, pancreas, or other nearby organs.  The end of the esophagus is then attached to part of the small intestine."  Surgery for Stomach Cancer, available at https://www.cancer.org/cancer/stomach-cancer/treating/types-of-surgery.html (last visited August 24, 2020).

[8] Pernicious anemia is "a type of vitamin B12 deficiency that results from impaired uptake of vitamin B-12 due to the lack of a substance known as intrinsic factor (IF) produced by the stomach lining."  *Pernicious Anemia and Vitamin B-12 Deficiency,* available at https://www.medicinenet.com/pernicious_anemia/article.htm (last visited August 24, 2020).

8

gastric cancer and gastrectomy and to neurology for further evaluation of his seizure disorder. *Id.*

On September 2, 2016, Mr. Montoya saw Dr. Longley for dizziness, anxiety, and pain. AR 1140, 1142.  Mr. Montoya reported recently falling while taking a picture of a waterfall.[9] AR 1140.  He further reported a history of benign paroxysmal positional vertigo ("BPPV").[10]  *Id.* Dr. Longley diagnosed him with chronic pain, left hip pain, right ankle pain, migraine, panic attacks, and vertigo.  AR 1141–42.  Dr. Longley continued Mr. Montoya on oxycodone-acetaminophen for his chronic pain; and prescribed diclofenac sodium and lidocaine ointment for Mr. Montoya's hip and ankle pain, alprazolam for his panic attacks, and meclizine for his vertigo.  *Id.*

On November 7, 2016, Mr. Montoya reported to Dr. Longley that he had been involved in a motor vehicle accident, possibly caused by a seizure, six weeks prior to the visit.  AR 1159. Dr. Longley diagnosed him with panic attacks, chronic pain, seizure disorder, insomnia, muscle spasms, and elevated blood pressure.  AR 1160–62.  Dr. Longley adjusted his medication for his anxiety, prescribing three strengths of alprazolam.  AR 1161.  Dr. Longley also adjusted his medications for chronic pain—trialing different strengths of tapentadol and different brands of narcotic pain medication (hydrocodone-acetaminophen and oxycodone-acetaminophen), and

---

[9] Mr. Montoya initially saw one of Dr. Longley's colleagues, Dr. Jeanelle O. Kious, after his August 23, 2016 fall.  *See* AR 1135–39.

[10] Benign paroxysmal positional vertigo ("BPPV") causes brief episodes of mild to intense dizziness and is usually triggered by specific changes in the position of the head.  BPPV can cause a person to feel out of balance while walking and standing, dizziness, nausea, and vomiting.  *Benign paroxysmal positional vertigo*, Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/vertigo/symptoms-causes/syc-20370055 (last visited August 24, 2020).

adding gabapentin.  *Id*.  Dr. Longley also prescribed diazepam for Mr. Montoya's insomnia and baclofen and cyclobenzaprine for his muscle spasms.  AR 1161–62.

On December 15, 2016, Dr. Longley did a complete physical of Mr. Montoya.  AR 1172.  Dr. Longley noted that Mr. Montoya recently had been hospitalized for pseudoseizures, and he changed Mr. Montoya's medication for panic attacks.  AR 1174; *see also* AR 1172 (Mr. Montoya reported a visit to the emergency room and a two to three day hospitalization).  Dr. Longley continued to treat Mr. Montoya for panic attacks, chronic pain, seizure disorder, left hip pain, right ankle pain, vertigo, hypogonadism, seasonal allergies, insomnia, and carcinoid tumor of the stomach.  AR 1174–75.  Dr. Longley simplified Mr. Montoya's medications for chronic pain management to hydrocodone-acetaminophen and tapentadol three times daily as needed for pain, and lidocaine topical ointment.  AR 1175.  Dr. Longley additionally diagnosed Mr. Montoya with essential hypertension, for which he prescribed valsartan.  AR 1174.  Dr. Longley also diagnosed Mr. Montoya with nausea, for which he prescribed ondansetron.  *Id*.

On February 2, 2017, Mr. Montoya saw Dr. Longley for medication refills.  AR 1185.  Mr. Montoya complained of diaphoresis, fatigue, nausea, vomiting, back and neck pain, dizziness, syncope, light-headedness, headaches and confusion.  AR 1186.  Mr. Montoya advised Dr. Longley that he had returned from Florida after work training and a Caribbean cruise, and that his pain medication had been stolen from his suitcase.  AR 1187.  Dr. Longley advised Mr. Montoya that online records showed he also had been getting medication refills from his doctor in Florida and that this, coupled with his claimed loss of medications in his suitcase, constituted two strikes, and a third strike would result in imposition of a pain contract.  *Id*.  Dr. Longley treated Mr. Montoya for chronic panic attacks, chronic pain, insomnia, essential hypertension,

irritable bowel syndrome with diarrhea, epistaxis, multiple fractures of the pelvis, and pain in the left shoulder.  AR 1186–88.

On June 9, 2017, Mr. Montoya saw Dr. Longley and reported pelvic pain, nausea, vomiting, diarrhea, abdominal distention, back pain, arthralgias, and headaches.  AR 1227–28.  Dr. Longley addressed numerous problems at this visit:  chronic panic attacks, chronic pain (secondary to multiple traumas, arthritis, and surgeries from carcinoid tumor), irritable bowel syndrome with diarrhea, rotator cuff tear/rupture of left shoulder, gastro-esophageal reflux disease ("GERD") without esophagitis, generalized anxiety disorder, history of stomach cancer (with re-occurring nausea, vomiting, and abdominal bloating), deviated septum, sebaceous cysts, and nausea.  AR 1228–30.  Dr. Longley increased the dosage of his pain medication.  AR 1228–29.  Dr. Longley also referred Mr. Montoya to a gastroenterologist to follow up on his nausea, vomiting, and abdominal bloating.  AR 1229.

On July 7, 2017, Mr. Montoya saw Dr. Longley and reported loss of appetite, myalgias, back pain, arthralgias, neck pain and neck stiffness, and headaches.  AR 1246.  He reported that his pain was "all over," and at times was a 10 out of 10.  AR 1245.  Dr. Longley diagnosed him with neuropathic pain (chronic regional pain syndrome secondary to ankle trauma).  AR 1247.  In addition, Dr. Longley continued to treat him for panic attacks, carcinoid tumor of the stomach (in remission), seizures, insomnia, essential hypertension, GERD, history of malignant carcinoid tumor of the stomach, nausea, vitamin B12 deficiency anemia, and pernicious anemia.  AR 1246–48.  The record from this visit shows Mr. Montoya was on 19 active prescription medications.  AR 1249–50.

On August 8, 2017, Mr. Montoya saw Dr. Longley and reported myalgias, arthralgias, neck pain, and cysts.  AR 1261.  On September 8, 2017, Mr. Montoya complained of more

migraines, back pain, and arthralgias. AR 1265. On November 6, 2017, Mr. Montoya complained of arthralgias, joint swelling, and myalgias. AR 1290. Dr. Longley continued to treat Mr. Montoya's carcinoid tumor of the stomach, migraines, panic attacks, chronic pain, insomnia, essential hypertension, seizures, irritable bowel syndrome with diarrhea, neuropathic pain, and nausea from August 2017 through November 2017. AR 1262–63, 1266–67, 1288–89. During this time, Dr. Longley removed some of Mr. Montoya's cysts and treated his seasonal allergies and conjunctivitis. AR 1263, 1266–67.

On January 18, 2018, Dr. Longley completed a Medical Assessment of Ability to Do Work-Related Activities (Non-Physical). AR 1354. The form asked Dr. Longley to provide "an assessment of how non-physical work activities are affected by the impairment(s), injuries, or sicknesses (e.g. pain or fatigue)." *Id*. The form further asked Dr. Longley to consider Mr. Montoya's "medical history and the chronicity of findings as from 2015 to current examination." *Id*. Dr. Longley opined that Mr. Montoya suffered from "a pain producing impairment, injury or sickness," and that his pain was "severe." *Id*. Dr. Longley also opined that Mr. Montoya's impairments caused sleep disturbances, fatigue, and forced him to "rest or lie down at regular intervals." *Id*. Finally, Dr. Longley opined that Mr. Montoya had the following limitations affecting his non-physical work activities:

- Moderate limitation in the ability to maintain attention and concentration for extended periods (i.e. 2-hour segments);
- Moderate limitation in the ability to perform activities within a schedule;
- Moderate limitation in the ability to maintain regular attendance and be punctual within customary tolerance;
- Moderate limitation in the ability to maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently;
- Moderate limitation in the ability to work in coordination with/or proximity to others without being distracted by them;

- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from pain and fatigue[-]based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

*Id.* Dr. Longley stated that Mr. Montoya had "many medical issues that interfere with daily functioning. Please see letter." *Id.* Dr. Longley's attached letter stated that Mr. Montoya had

> multiple complicated medical issues including history of carcinoid tumor of the stomach and status post partial gastric resection, chronic weight loss secondary to his carcinoid tumor, chronic migraine headaches, chronic regional pain syndrome, generalized anxiety, insomnia, depression, panic attacks, seizure disorder, hypogonadism, pernicious anemia and chronic nausea. He has flares of pain and nausea frequently related to these medical conditions. He also has frequent physician visits due to these chronic issues. This has limited his ability to effectively function in a work environment. Due to some of his prescription medications he has been unable to obtain certain forms of employment. Because of these reasons, I feel that he should medically qualify for Social Security/disability income. Please take into account his multiple, complicated medical issues when reviewing his case.

AR 1356.

Mr. Montoya pointed out in his opening brief that the ALJ did not complete the first step of the treating physician analysis: determining whether the opinion was entitled to controlling weight. Doc. 22 at 8. However, Mr. Montoya did not develop this argument, and in his reply states that he did "not assert that the ALJ's lack of discussion regarding whether Dr. Longley's opinion was entitled to controlling weight was, in and of itself, reversible error." Doc. 27 at 2. The Court therefore does not analyze whether the ALJ erred in failing to complete the first step of the treating physician analysis.

Mr. Montoya argues that the ALJ erred at step two of the treating physician analysis by failing to apply the six factors in the regulations to determine if the treating source's opinion should be rejected altogether or assigned some lesser weight. Doc. 22 at 8–11; Doc. 27 at 1–5. The ALJ effectively rejected Dr. Longley's opinions by giving them "little weight." AR 24. *See*

*Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (stating that "according little weight to" an opinion is the same as "effectively rejecting" it). The ALJ gave three reasons for rejecting Dr. Longley's opinions: (1) Dr. Longley's opinions are "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion"; (2) Dr. Longley's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled"; and (3) the "possibility" that Dr. Longley only expressed his "opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." AR 24–25. Mr. Montoya argues that these reasons are not "sufficiently specific" and do not constitute "substantial evidence." Doc. 22 at 10. The Court agrees. The ALJ did not give "specific, legitimate reasons" for rejecting Dr. Longley's opinion; therefore, remand is required. *See Robinson*, 366 F.3d at 1082.

The first reason the ALJ gave for rejecting Dr. Longley's opinion—that the opinions were "quite conclusory"— is not sufficiently specific and is unsupported by substantial evidence. While the ALJ states that Dr. Longley's opinions were "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion[,]" the ALJ failed to acknowledge or discuss the letter that Dr. Longley attached to and referenced in his opinion. *See* AR 1354–56. While an ALJ "is not required to discuss every piece of evidence . . . in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (internal citations omitted). Dr. Longley's letter explained that he found Mr. Montoya limited due to "multiple complicated medical issues including history of carcinoid tumor of the stomach and status post partial gastric resection, chronic weight loss secondary to his carcinoid tumor, chronic migraine headaches, chronic

14

regional pain syndrome, generalized anxiety, insomnia, depression, panic attacks, seizure disorder, hypogonadism, pernicious anemia and chronic nausea." AR 1356. Dr. Longley's letter also explained that Mr. Montoya "has flares of pain and nausea frequently related to these medical conditions" and "frequent physician visits due to these chronic issues." *Id*. The ALJ did not discuss this significantly probative evidence. Further, the Commissioner did not respond to Mr. Montoya's argument that the ALJ's failure to address Dr. Longley's letter renders this reason for rejecting the doctor's opinion invalid. *See* Doc. 26 at 9–11. The ALJ's mere assertion that Dr. Longley's opinion is "conclusory," coupled with the ALJ's failure to discuss Dr. Longley's narrative explanation, renders this reason for rejecting Dr. Longley's opinion not "sufficiently specific" and unsupported by substantial evidence.

      The second reason the ALJ gave for rejecting Dr. Longley's opinion—that Dr. Longley's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled[,]" AR 24–25—also is not "sufficiently specific" and is unsupported by substantial evidence. The only evidence the ALJ cites in support of this reason is the fact that Dr. Longley's treatment notes repeatedly indicate "normal physical exams," citing generally to "Exhibit B15F."[11] AR 25. However, as Mr. Montoya points out, Dr. Longley completed an assessment of Mr. Montoya's **non-physical** work activities and "[n]either the ALJ, nor the Commissioner, provide any explanation as to how findings on physical examination evinced inconsistency with Dr. Longley's opined non-physical limitations." Doc. 27 at 3. Dr. Longley completed a Medical Assessment of Ability to Do Work-Related Activities (Non-Physical) that asked him to provide an "assessment of how non-physical work activities are

---

[11] Exhibit B15F is a 214-page exhibit that consists of records from Presbyterian Healthcare Services, from May 25, 2016 to November 6, 2017, some of which are Dr. Longley's treatment notes. AR 1125–1338.

15

affected by the impairment(s), injuries, or sicknesses (e.g. pain or fatigue)." AR 1354. Dr. Longley opined that Mr. Montoya "suffers from a pain producing impairment, injury, or sickness," and that Mr. Montoya's pain was "severe." *Id.* Dr. Longley's treatment records are replete with complaints, diagnoses, and treatment for pain (AR 1128–30, 1140–42, 1160–62, 1174–75, 1186–88, 1227–29, 1245–50, 1261–63, 1265–67, 1288–90). The ALJ offers no explanation of "the type of significant clinical and laboratory abnormalities" necessary to support Dr. Longley's opinions. Paradoxically, the ALJ stated elsewhere in his decision that Mr. Montoya's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms" of pain (abdominal, muscle, bone); lifting, sitting, standing, and walking limitations; dizziness; constipation alternating with diarrhea; medication side effects of dry mouth, slurred speech, and muscle tremors; difficulty sleeping and daytime grogginess. AR 22. It is unclear why Mr. Montoya's medically determinable impairments could be reasonably expected to cause the pain and limitations that Mr. Montoya reported, but could not reasonably be expected to cause the pain and limitations that Dr. Longley reported. The ALJ simply does not explain how Dr. Longley's opinions are inconsistent with the "clinical and laboratory abnormalities" noted in his treatment records, and the Court does not see any obvious inconsistency. *See Langley*, 373 F.3d at 1123 (ALJ's failure to explain or identify inconsistencies rendered ALJ's "reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."); *see also King v. Barnhart*, F. App'x 968, 972 (10th Cir. 2004) (unpublished) (finding ALJ erred by rejected treating physicians' opinions "as inconsistent with the credible evidence of record without identifying what that *inconsistent* record evidence is").

Finally, the ALJ asserts that Dr. Longley's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact **disabled**." AR 24–25 (emphasis added). But, as the Commissioner points out, whether or not Mr. Montoya is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)–(3) (effective March 27, 2017); *see* Doc. 26 at 10 n.5. What the ALJ was required to explain before rejecting Dr. Longley's opinion is how the **moderate limitations** in Dr. Longley's opinion are not supported by his treatment notes. This the ALJ did not do. The ALJ neither asserts nor explains how Dr. Longley's treatment notes are inconsistent with the numerous moderate limitations in his opinion. AR 24. The ALJ failed to support this reason for discounting Dr. Longley's opinion with adequate explanation and it does not constitute substantial evidence.

The third reason the ALJ gave for rejecting Dr. Longley's opinion—that "there is a possibility" that Dr. Longley only expressed his "opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another" (AR 25)—is without merit. The Tenth Circuit held in *Frey v. Bowen* that an ALJ's statement that a treating physician would tend to advocate for his patient's cause was not "any sort of good cause to reject" the treating physician's opinion, but rather "a conclusory statement that contradicts our established legal rule . . . ." 816 F.2d 508, 515 (10th Cir. 1987); *see also McGoffin v. Barnhart*, 288 F.3d 1248, at 1252 (10th Cir. 2002). Neither the ALJ nor the Commissioner suggest any "exceptional basis in the facts of this case" for ignoring the general rule. *Frey*, 816 F.2d at 515. In fact, the Commissioner concedes that this is not a valid reason for rejecting Dr. Longley's opinion: "even if the ALJ erred in merely noting this possibility, the ALJ gave other good reasons—supported by the record—for discounting the opinions, and his statement to this effect does not constitute

17

reversible error." Doc. 26 at 10–11. However, as explained above, the Court does not agree that the ALJ gave other good reasons supported by the record for discounting Dr. Longley's opinion. Remand is therefore required.

## VI.     Conclusion

The ALJ erred by failing to conduct a proper treating physician analysis of the opinion of Dr. Longley. The Court remands so the Commissioner can properly assess Dr. Longley's opinion. The Court does not reach Ms. Montoya's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 22) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent